[24 NYS3d 333]

In the Matter of JENNIFER MOLLOY, Appellant, v WILLIAM MOL-
LOY, Respondent.

Second Department, January 20, 2016

48

**APPEARANCES OF COUNSEL**

*Stephanie Taylor*, Jamaica (*Brian Dworkin* of counsel), for appellant.

## OPINION OF THE COURT

Chambers, J.

This case presents an opportunity to consider the meaning of "good cause" to extend an order of protection pursuant to Family Court Act § 842.

### I.

The petitioner and the respondent were married in May 2002, and are the parents of one child. In February 2010, the petitioner filed a family offense petition against the respondent. Following a hearing, the Family Court found that the respondent committed the family offenses of menacing in the third degree, reckless endangerment in the second degree, and assault in the third degree, and issued a two-year order of protection in favor of the petitioner and the parties' child. The order required the respondent to stay away from the petitioner, the child, their home, and the child's school, except for agreed-upon or court-ordered visitation. It further directed the respondent to refrain from committing assault, stalking, harassment, menacing, reckless endangerment, and certain other offenses against the petitioner and the child.

As the expiration date of the order of protection approached, the petitioner moved to extend it for five years, arguing that there was "good cause" for the extension, citing Family Court Act § 842. In her supporting affidavit, the petitioner alleged that the respondent had violated the order of protection by, for example, showing up at her apartment and banging on the door, and driving his vehicle too closely to the petitioner, a wheelchair user, while she was on her way to a police station for a custody exchange. Fearing for her safety, she reported some of these incidents to the police, as documented in three New York City Police Department Domestic Incident Reports she submitted in support of her motion. She alleged that he had recently been arrested for violating the order of protection, and that the case was pending in the Criminal Court of the City of New York, Queens County. The petitioner also claimed that the respondent's girlfriend warned her that the respondent said that when the petitioner's order of protection expired he would return to her residence, and he threatened to kill her.

The petitioner also noted that because she and the respondent have a child in common they have to frequently interact regarding the child's visitation. The petitioner claimed that the respondent's conduct during the course of their interactions

over the past several years had so terrified her that she carried a panic alarm whenever she left her home. She feared that once the order of protection expired the respondent would begin harassing her again and might harm or kill her.

The respondent opposed the petitioner's motion. At the request of the Family Court he submitted, inter alia, a certificate of disposition and transcript from the Criminal Court of the City of New York, Queens County, both dated February 24, 2014, which indicated that he had pleaded guilty to a reduced charge of disorderly conduct. As a part of that disposition, a two-year order of protection was granted in favor of the petitioner and against him "subject to any subsequent orders from Family Court regarding visitation and custody."

The Family Court denied the petitioner's motion to extend the Family Court order of protection, holding that because the petitioner had already been granted a two-year order of protection in Criminal Court, the goal behind Family Court Act § 842 was accomplished and, thus, the petitioner had not demonstrated good cause to extend the order of protection.

## II.

■ Initially, the expiration of the order of protection by its own terms does not render this appeal academic, because the issue on appeal is whether the Family Court erred in declining to extend the order of protection beyond that expiration date (*see Matter of Leon v Landaverde*, 121 AD3d 898, 899 [2014]; *Matter of Margary v Martinez*, 118 AD3d 1004, 1005-1006 [2014]; *Matter of V.C. v H.C.*, 257 AD2d 27, 32-33 [1999]). The petitioner is seeking to extend the order of protection for five years, to December 1, 2018, which, if granted, would directly affect the parties' rights going forward (*see Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]; *Matter of Margary v Martinez*, 118 AD3d at 1005-1006).

■ Next, contrary to the Family Court's conclusion, the Criminal Court's issuance of an order of protection did not negate or otherwise render superfluous the petitioner's request for an extension of her Family Court order of protection. A victim of domestic violence may "commence a proceeding in either or both Family Court and [C]riminal [C]ourt" and "[e]ach court has the authority to issue temporary or final orders of protection" (*People v Wood*, 95 NY2d 509, 512-513 [2000]; *see Matter of Alfeo v Alfeo*, 306 AD2d 471 [2003]). Therefore, the Criminal Court's issuance of an order of protection did not

preclude the Family Court from extending the order of protection it had previously issued (*see Matter of Alfeo v Alfeo*, 306 AD2d at 471). Moreover, had the respondent successfully appealed the criminal matter, the Criminal Court's order of protection would have been vacated. Thus, it was entirely proper for the petitioner to seek an extension of the Family Court order of protection.

Section 842 of the Family Court Act provides, in pertinent part, that a court "may . . . , upon motion, extend [an] order of protection for a reasonable period of time upon a showing of good cause or consent of the parties." The critical issue before us is whether the petitioner established "good cause" to extend the duration of the order of protection, as that term is applied in Family Court Act § 842. We approach this issue by first considering the legislative history of that section. When the Family Court Act was first enacted in 1962, it included provisions giving the Family Court the authority to enter an order of protection with certain reasonable conditions of behavior (*see* L 1962, ch 686; 1962 McKinney's Session Laws of NY at 2315-2316). Initially, however, the Family Court did not have the authority to extend an order of protection. It was not until 1972 that the legislature gave the Family Court the discretion to extend an order of protection "upon the showing of special circumstances" (L 1972, ch 761, § 1; 1972 McKinney's Session Laws of NY at 2435). The term "special circumstances" was not defined in the statute, and case law did not develop or elucidate its meaning (*see Matter of Waldman v Waldman*, 47 AD3d 637, 638 [2008]; *Matter of J.R.W. v L.F.W.*, 7 Misc 3d 1015[A], 2005 NY Slip Op 50612[U] [Fam Ct, Nassau County 2005]; *Matter of J.G. v B.G.*, NYLJ, Nov. 18, 1999 at 36, col 3 [Fam Ct, Nassau County, Lawrence, J.]; Mem of Office for the Prevention of Domestic Violence, Bill Jacket, L 2010, ch 325 at 21; Empire Justice Center Mem in Support, L 2010, ch 325 at 78). Notably, victims were "frequently discouraged from applying for an extension" and, in fact, "rarely pursued" one (Mem of Assembly Judiciary Committee, Bill Jacket, L 2010, ch 325 at 5). Instead, they waited "until the recurrence of an incident of abuse to apply for a new order of protection" (*id.*).

As a consequence, domestic violence advocacy groups sought relief from the legislature. This was the situation the legislature sought to remedy in 2010 when it amended section 842. The legislature recognized that victims should not have to wait for the commission of another family offense before

seeking an extension (*see* Assembly Mem in Support, Bill Jacket, L 2010, ch 325 at 8). Thus, the new amendment lowered the standard by permitting the Family Court to extend an order of protection upon a showing of "good cause" rather than "special circumstances" (Mem of Assembly Judiciary Committee, Bill Jacket, L 2010, ch 325 at 5).

The legislature did not define "good cause" in the statute, but it declared that "[t]he fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order" (Family Ct Act § 842). In addition, the legislature intended, as reflected in the bill jacket, that petitioners might "apply for extensions for various reasons to ensure their safety" (Assembly Mem in Support, Bill Jacket, L 2010, ch 325 at 9). Underscoring this point, the legislature cited as examples that

> "the existing court order may have worked in preventing domestic abuse, and/or there are circumstances that may cause the parties to interact. Such interaction may be as a result of pending litigation, the initiation of litigation, compliance with the terms of divorce or family court agreements or judgments, meeting the needs of children in common including following visitation orders, or the resurfacing of the respondent for one reason or another, including release from prison to name a few" (*id.*).

In each case, a

> "request for an extension should be viewed in the context of the facts of the case, including present circumstances, past abuse by the respondent, threats of abuse by the respondent and relevant information concerning the safety and protection of the protected persons with the primary goal to prevent a recurrence of abuse" (*id.*).

As such, the legislative history makes plain the legislature's intent to afford greater protection to victims of domestic violence by permitting them to obtain an extension of an existing order of protection to prevent a reoccurrence of domestic abuse upon a showing of "good cause" (*see* Assembly Mem in Support, Bill Jacket, L 2010, ch 325 at 8). We now take this opportunity to elucidate further the meaning of "good cause."

Although section 842 of the Family Court Act does not define "good cause," it is a common legal term. Good cause is "difficult to define in absolute terms, [but] it generally signifies a sound

basis or legitimate need to take judicial action" (*In re Alexander Grant & Co. Litig.*, 820 F2d 352, 356 [11th Cir 1987]). Faced with the interpretation of a similar statute permitting an order of protection to be extended upon a showing of good cause without defining that phrase, the Supreme Court of New Hampshire emphasized that good cause should be read in context by considering the statute as a whole (*see MacPherson v Weiner,* 158 NH 6, 10, 959 A2d 206, 210 [2008]), a principle of statutory interpretation that is entirely consistent with New York law (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 97; *Matter of New York County Lawyers' Assn. v Bloomberg,* 19 NY3d 712, 721 [2012]; *New York State Psychiatric Assn., Inc. v New York State Dept. of Health,* 19 NY3d 17, 23-24 [2012]; *Matter of Sanantonio v Lustenberger,* 73 AD3d 934, 936 [2010]). Good cause should also be interpreted in accordance with legislative intent, as expressed in the legislative history (*see Matter of Sutka v Conners,* 73 NY2d 395, 403 [1989]; *Matter of Luis C.,* 124 AD3d 109, 112 [2014]), which in this case aims to prevent reoccurrences of domestic violence. Thus, in determining whether good cause has been established, courts should consider, but are not limited by, the following factors: the nature of the relationship between the parties, taking into account their former relationship, the circumstances leading up to the entry of the initial order of protection, and the state of the relationship at the time of the request for an extension; the frequency of interaction between the parties; any subsequent instances of domestic violence or violations of the existing order of protection; and whether the current circumstances are such that concern for the safety and well-being of the petitioner is reasonable (*see MacPherson v Weiner,* 158 NH at 11, 959 A2d at 211).

The trial court, which has the benefit of seeing and hearing the witnesses, and may even be familiar with the parties, is in the best position to make this fact-specific determination. In this instance, some of the allegations in the petitioner's papers cannot be resolved without an evidentiary hearing. For example, it is not clear if, as recounted in the Domestic Incident Reports, the respondent's conduct occurred as alleged or even if it constitutes a violation of the subject order of protection. Nevertheless, section 842 does not mandate such a hearing, and we find that the petitioner made a facially sufficient application that warrants consideration of the relief requested.

■ The petitioner stated that, because they have a child in common, the parties continue to interact. They come into

contact during litigation over custody and visitation issues and when they exchange the child at the drop-off location at the police station. The respondent also has a history of assaulting the petitioner, and their on-going discord continues. There is no evidence in the record to suggest that the petitioner's more serious allegations were contrived. Moreover, it is undisputed that, since the entry of the subject order of protection, the respondent has pleaded guilty in the Criminal Court to disorderly conduct, and the Criminal Court has issued a two-year order of protection in favor of the petitioner. Therefore, it is clear from the record that the petitioner's fear that the respondent may stalk, harass, or attack her is well-founded, and that the unavoidable interactions between the parties may subject her to a reoccurrence of violence (*see Matter of Ellen Z. v Isaac D.*, 47 Misc 3d 389, 394 [Fam Ct, Queens County 2015]). Accordingly, we find that there is good cause to extend the order of protection.

As to the length of the extension, Family Court Act § 842 grants a court the discretion to extend the order of protection for a "reasonable period of time." It is evident from the legislature's use of the term "reasonable" that it wanted to give the courts flexibility to fashion an appropriate time period for the order of protection based on the particular circumstances of the parties (*see* Black's Law Dictionary [10th ed 2014], reasonable ["(f)air, proper, or moderate under the circumstances"]). Consistent with a plain reading of "reasonable," the legislative history of the 2010 amendment notes that applicants may have "various reasons" (Assembly Mem in Support, Bill Jacket, L 2010, ch 325 at 9) for seeking an extension, and it directs courts to view an extension in the context of the facts of the case (*see Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d 106, 120 [2012]). In this instance, there has been a prior finding that the respondent committed family offenses against the petitioner that led to the initial order of protection. While the instant request for an extension of that order of protection was pending, the respondent pleaded guilty to disorderly conduct and a two-year order of protection was issued in Criminal Court in favor of the petitioner. The parties will continue to interact when exchanging the child so that the respondent may visit with him, and when litigating over custody and visitation issues. Considering these circumstances, we conclude that five years is a reasonable period of time to extend the order of

protection (*see Matter of Waldman v Waldman*, 47 AD3d at 638).

Accordingly, the order is reversed insofar as appealed from, on the law, the petitioner's motion pursuant to Family Court Act § 842 to extend the order of protection dated December 1, 2011, is granted, and the order of protection dated December 1, 2011, is extended until November 30, 2018.

MASTRO, J.P., BALKIN and MALTESE, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, without costs or disbursements, the petitioner's motion pursuant to Family Court Act § 842 to extend the order of protection dated December 1, 2011, is granted, and the order of protection dated December 1, 2011, is extended until November 30, 2018.